IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LAND 2 AIR INVESTMENTS, LLC, as successor entity by conversion to LAND 2 AIR INVESTMENTS LP and as successor to LAND 2 AIR INVESTMENTS, LLP,<br><br>Plaintiff,<br><br>v.<br><br>FLYING CPA, LLC, LONI WOODLEY, and SAKER AVIATION SERVICES CO.,<br><br>Defendants. | § § § § § § § § § § § § § § § § § Case No. 21-CV-00231 BMJ-JFJ |

**PLAINTIFF'S MOTION FOR SANCTIONS OR, ALTERNATIVELY,
MOTION TO COMPEL AGAINST DEFENDANTS FLYING CPA, LLC
AND LONI WOODLEY and BRIEF IN SUPPORT**

Plaintiff Land 2 Air Investments, LLC hereby files this Motion for Sanctions or Alternatively, Motion to Compel Against Defendants Flying CPA, LLC and Loni Woodley (collectively, "Defendants"), and in support thereof, shows the Court as follows:

**I. INTRODUCTION**

At issue in this case is whether Defendant Loni Woodley ("Woodley") knew that the Aircraft he sold to Plaintiff had been severely damaged in a crash, had been poorly maintained, and actually consisted of two crashed planes put together to create one – one that he told Plaintiff had "landed itself" during an attempted crash and only suffered minor wing damage, which had since been repaired.

In pursuing discovery in this case, Plaintiff asked Defendants to produce correspondence by and between Woodley and his mechanic, David Landreth ("Landreth"). While Defendants produced some correspondence, they specifically did not produce emails that showed Landreth notifying Woodley of the deplorable condition of the Aircraft. Even after Landreth produced his copies of the correspondence, Defendants have not. Therefore, for the reasons stated herein, Plaintiff requests that

the Court deem as established that Woodley knew at the time he represented to Plaintiff that the Aircraft was in good condition, he knew his representations to Plaintiff were false and that the Aircraft actually had been destroyed. Alternatively, Plaintiff asks the Court to compel Defendants to produce their computer hard drives for imaging and searching at Defendants' expense for all correspondence between Woodley and Landreth. As shown below, Defendants have intentionally withheld documents relevant to this lawsuit, which merits sanctions for discovery abuse.

## II. CONFERENCE CERTIFICATION

Pursuant to Local Rule LCvR37-1 and Fed. R. Civ. P. 37(a)(1), we have attempted to confer over the dispute in good faith, via telephone and email because the distance between counsels' offices renders a personal conference infeasible, but Defense has refused confer. Plaintiff's counsel is located in Dallas, Texas, and Defendants' counsel is in Tulsa, Oklahoma.  Plaintiff made calls to Defendant Flying CPA and Loni Woodley, twice on August 30, 2023 in which we were told that Mr. McPherson was in the office and would call back but did not.  I made another call to conference on August 31, 2023, and received an email response stating that he had received my detailed call but wanted to wait a week. Oddly, while the parties conferenced via email on September 5th, 2023, regarding Plaintiff and Defendants amended exhibit lists, defendant continued to refuse to conference on the Plaintiff's motion for sanctions. On September 6, 2023, Defendant Flying CPA took the position that his client did not have a duty to provide unproduced but relevant documents to discovery and continued to refuse to conference; thus, causing the Plaintiff to file this motion and seek the court's rulings.

## III.  FACTUAL BACKGROUND

The following is a timeline of relevant discovery events:

| Date | Event | Defendants' Response/Comment |
|---|---|---|
| 5/21/2020 | Complaint alleges, in part, that Defendants committed fraud by both misrepresenting the condition of the aircraft and by failing to disclose the aircraft's true destroyed condition. | |

PLAINTIFF'S MOTION FOR SANCTIONS OR, ALTERNATIVELY, MOTION TO COMPEL
AGAINST DEFENDANTS FLYING CPA, LLC AND LONI WOODLEY

2

| 8/25/2021 | Defendants' Initial Disclosures | Produced Bates 0001-00069, including two emails from Woodley to Landreth providing inspection documentation for a quick inspection by Landreth. |
|---|---|---|
| 3/20/23 | Defendants' Expert Disclosures | Defendants produced nothing, not even the two experts' files. |
| 7/3/2023 | Plaintiff files motion for partial summary judgment on breach of contract based on the condition of the aircraft as being destroyed and nonrepairable. | |
| 7/24/2023 | Defendants produce Bates Range 70-76, which do not include any emails between David Landreth and Defendants. | |
| 8/7/2023 | Defendants serve answers and objections to written discovery, but no responsive documents are produced. Specific Requests at issue:<br><br>**REQUEST FOR PRODUCTION NO. 8:** Produce all written or recorded communications or correspondence between any member, manager, employee, agent, or representative of Defendants and David Landreth, including emails, text messages, letters, instant messages, or other similar documents or things, concerning the subject airplane or any fact alleged in the Complaint.<br>**RESPONSE:** To the extent that Plaintiff has further responsive and relevant documents, responsive documents will be produced.<br><br>**REQUEST FOR PRODUCTION NO. 11:** Produce any and all documents, including communications, by and between You and David Landreth from January 2017 to present.<br>**RESPONSE:** To the extent that Plaintiff has further responsive and relevant documents, responsive documents will be produced.<br><br>**REQUEST FOR PRODUCTION NO. 12:** Produce any and all documents, communications and or things showing that David Landreth recommended to you the performance of any repairs and/or replacement of any parts on the subject airplane.<br>**RESPONSE:** To the extent that Plaintiff has further responsive and relevant documents, responsive documents will be produced. | Defendants do not object, nor do they provide documents or state whether they have responsive documents. |

PLAINTIFF'S MOTION FOR SANCTIONS OR, ALTERNATIVELY, MOTION TO COMPEL AGAINST DEFENDANTS FLYING CPA, LLC AND LONI WOODLEY

3

|  | (Exhibit 1) |  |
|---|---|---|
| 8/10/2023 | Defendants produce documents in response to the requests for production, but produce no emails responsive to the requests regarding Landreth. | Defendants produce Bates Nos. 00077 – 00361, stating that these documents are "likely" already in the possession of Plaintiff **(Exhibit 2 p. 2)** |
| 8/11/2023 | Plaintiff requests immediate production and identification of emails with Landreth, noting this is especially important due to the upcoming deposition of Landreth on August 22, 2023:<br><br>"…Especially important are RFP responses to 8,10, 11, & 14, as it relates to David Landreth, as it appears that no documents were produced. These requests relate to communications with David Landreth and communications with those providing annual inspections on the aircraft (8, 10, 11, 14 and 15). As you recall, Mr. Woodley testified in his deposition that he had email communications with David Landreth. Where are these emails? Due to the proximity of Mr. Landreth's deposition, it is urgent that we either secure satisfactory responses this next week or seek the discovery magistrate to rule next week." **(Exhibit 3)** |  |
| 8/14/2023 4:25 PM | Defendants' counsel states "…all responsive production in possession or control of Woodley and FCPA have been served." **(Exhibit 4)** |  |
| 8/14/2023 5:20 PM | Plaintiff's counsel requests clarification on whether Defendants have communications with Landreth. **(Exhibit 4)** | Defendants do not respond. |
| 8/18/2023 3:48 PM | Independent witness David Landreth produces communications between Landreth and Woodley in response to subpoena. | Production includes evidence that Woodley committed fraud to induce Plaintiff to purchase the aircraft and shows that Woodley did so knowing that the aircraft was unsafe for flight. **(Exhibit 5)** |
| 8/18/2023 4:27 PM | Defendants, at the close of business on the Friday before Landreth's Tuesday deposition, send "supplemental production" Bates range 362-407, which includes some communications with Landreth, but does not include those that establish Woodley's knowledge of the true condition of the aircraft and establish the falsity of the statements he later made to Plaintiff. | The documents include communications with Landreth, but omit the "smoking gun" communications provided by Landreth that prove that Defendants committed fraud in the sale of the aircraft to Plaintiff **(Exhibit 6).** |

| 8/21/2023 | Plaintiff's counsel again requests a complete document production from Defendants before Landreth's deposition. | Of the documents produced by Defendants, several communications (including some with Landreth) reference attachments to the emails, but the attachments were not produced. Plaintiff requested production of the attachments. Defendants did not respond to Plaintiff's request. **(Exhibits 7, 7a-i)** **As of the date of filing this Motion to Compel and for Sanctions, Plaintiff has received no response to this request for supplementation.** |

A review of the Landreth-Woodley communications produced by Defendants, as compared to the documents produced by Landreth, clearly show that Defendants carefully edited their production to only provide documents that did not show Woodley's actual knowledge of the true destroyed status of the Aircraft.[1] In fact, of the Woodley-Landreth correspondence produced by Landreth, Defendants produced only three of the emails – conveniently, none of the emails produced by Defendants addresses Woodley's knowledge of the aircraft's condition, although Landreth's production clearly shows that such documents exist:[2]

| Date of Email | Producing Party | Email description |
|---|---|---|
| 6/8/17 | Landreth | Email Landreth to Woodley reminding him of upcoming annual inspection due. **(Exhibit 8a)** |
| 6/8/17 | Landreth | Email Landreth to Woodley forwarding invoice and work order dated 6/8/17 **(Exhibit 8b)** |
| 6/9/17 | Landreth | Email string Woodley questioning charge on invoice and Landreth explaining the basis for the charge **(Exhibit 8c)** |

---

[1] While Defendants provided a few emails between Woodley and Landreth in their Initial Disclosures, none pertains to the condition of the Aircraft, nor do they include the email showing that Woodley knew the Aircraft was the product of two crashed planes, or that parts used on the Aircraft were unverifiable as good parts.

[2] Both parties also produced additional documents pertaining to Woodley's work as a CPA for Landreth; however, since they do not form the basis for this Motion, they have not been included in this chart.

**PLAINTIFF'S MOTION FOR SANCTIONS OR, ALTERNATIVELY, MOTION TO COMPEL AGAINST DEFENDANTS FLYING CPA, LLC AND LONI WOODLEY**  5

| | | |
|---|---|---|
| 6/9/17 4:17 PM | Landreth | Email Landreth explaining to Woodley that the Aircraft had suffered a major crash, was not properly maintained, had exhaust issues, had dirt and debris inside, had water contamination of electronics, had corroded control cables, had repaired wings and many other issues. Landreth states he believes Woodley will suffer a flight safety issue and recommends getting the annual inspection done with a different mechanic because repairs will cost more than Woodley wants to pay. **(Exhibit 8d)** |
| 6/14/17 | Landreth | Woodley response to 6/8/17 email regarding annual inspection due at end of month. **(Exhibit 8e)** |
| 7/19/17 7:52 PM | Landreth | Landreth email to Woodley asking whether Woodley will authorize Cirrus-suggested maintenance items that are due or past due in connection with annual inspection. **(Exhibit 8f)** |
| 7/20/17 6:07 AM | **Defendants** | Email Woodley/Landreth re CPA invoices/business **(Exhibit 9)** |
| 7/20/17 6:12 AM | **Defendants** | Email string Woodley/Landreth re annual inspection and items Woodley agrees or refuses to repair **(Exhibit 10)** |
| 7/20/17 9:21 AM | Landreth | Landreth response to Exhibit 10, notifying Woodley again about problems with the Aircraft, that the prior owners poorly maintained it, that undocumented alleged repairs are unreliable and untrustworthy, that it was put together from two different airframes (two crashed planes cobbled together), and that many parts on the Aircraft cannot be tracked as to where they came from. **(Exhibit 8g)** |
| 8/5/17 6:05 PM | Landreth | Email Landreth requesting payment, forwarding current invoice, work order and log entry. **(Exhibit 8h)** |
| 8/5/17 6:35 PM | Landreth | Email Landreth again requesting payment and forwarding current invoice, work order and log entry **(Exhibit 8i)**. |
| 8/11/17 | Landreth and **Defendants** | Email string Landreth/Woodley re Landreth request for return of his tax documents **(Exhibit 8j)**. |

## IV.  MOTION FOR SANCTIONS

**A.   Applicable Law.**

Plaintiff asks the Court to sanction Defendants for discovery abuse due to their willful failure to produce documents responsive to Plaintiff's request for production. "The Federal Rules of Civil Procedure, anticipating that civil litigation would not always be entirely civil, provide a means for a district court to sanction attorneys and their clients for a variety of inappropriate conduct." *Tom v. S.B., Inc.*, 280 F.R.D. 603, 610 (D.N.M. 2012). Fed. R. Civ. P. 37(c)(l) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion,

**PLAINTIFF'S MOTION FOR SANCTIONS OR, ALTERNATIVELY, MOTION TO COMPEL AGAINST DEFENDANTS FLYING CPA, LLC AND LONI WOODLEY**    6

at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;

(B) may inform the jury of the party's failure; and

(C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Rule 37(a)(4) provides that an evasive or incomplete disclosure, answer or response is to be treated as a failure to disclose, answer or respond. A determination as to the proper sanction for a discovery violation is a fact-specific inquiry that is within the sound discretion of the trial court. *Ehrenhaus v. Reynolds*, 969 F.2d 916, 920 (10th Cir. 1992).

Because the evidence withheld by Defendants supports Plaintiff's case rather than Defendants' defenses, preventing Defendants from using the unproduced documents under Rule 37(c) is not an appropriate sanction and instead rewards Defendants for their misconduct. Therefore, Plaintiff asks the Court to look to Rule 31(c)(1)(C) for an appropriate sanction. This subsection states that the Court may, among other sanctions, issue an order (1) establishing facts as true; (2) preclude Defendants from supporting or opposing claims or defenses, or prohibit them from introducing designated matters in evidence; and/or (3) striking pleadings or parts thereof, or (4) dismissing the action or any part thereof, or (5) rendering a judgment by default.

The *Toms* court, in explaining the difference between Rule 37(b) sanctions and Rule 37(c) sanctions, noted that Rule 37(c) punishes "misbehavior," which the court defines as "breaking general rules which apply equally to all." *Toms*, 280 F.R.D. at 611. If a court decides that "the misbehavior … demand[s] sanctions under Rule 37(c) short of entering a default judgment, 'a district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose.'" *Id., quoting Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). The court should still weigh the following factors in determining the appropriate

**PLAINTIFF'S MOTION FOR SANCTIONS OR, ALTERNATIVELY, MOTION TO COMPEL AGAINST DEFENDANTS FLYING CPA, LLC AND LONI WOODLEY**

7

sanction: (1) the prejudice or surprise to the party; (2) the ability of the party to cure the prejudice; and (3) the moving party's bad faith. *Id.* (citations omitted). As shown below, Defendants should be sanctioned for their outright refusal to produce responsive documents.

**B.     The Documents Should Have Been Produced.**

In its Request for Production of Documents to Defendants, Plaintiff requested copies of correspondence between Landreth and Defendants. *See* Exhibit 1 at Req. Nos. 8, 11, 12. Defendants did not object to these Requests, nor did they claim to be withholding responsive documents. The documents produced by Landreth in Exhibit 8 clearly are responsive to these Requests, and should have been produced by Defendants in response to the Requests for Production. Further, the attachments referenced in the document produced by Plaintiff also should have been produced since they are responsive to the requests. *See* Exhibits 7 and 7a-i.

**C.     Defendants Should be Sanctioned for Their Willful Failure to Produce.**

Defendants should be sanctioned for their willful failure to produce responsive documents that are vital to Plaintiff's case – documents that show undisputedly that Woodley knew that the Aircraft was in poor condition, was poorly maintained, and was comprised of two separate planes cobbled together and other miscellaneous parts of dubious quality (*See* Exhibits 8d and 8g). Nevertheless, Woodley later represented to Plaintiff, in order to induce Plaintiff to purchase the Aircraft, that there was "slight damage on 1 wing that was repaired … The plane landed itself but with slight wing damage." (*See* Exhibit 11). The emails directly contradict the representations made by Woodley to Plaintiff to fraudulently induce Plaintiff to purchase the Aircraft. "The concealed emails are as close to the legendary smoking gun as a litigant could ever hope to get without actually watching the trigger being pulled at trial." *Kokot v. Maxim Healthcare Servs.,* 2019 U.S. Dist. LEXIS 179304, 2019 WL 5095727 (D. Colo. August 15, 2019).

   **1.     Prejudice or Surprise.**

PLAINTIFF'S MOTION FOR SANCTIONS OR, ALTERNATIVELY, MOTION TO COMPEL
AGAINST DEFENDANTS FLYING CPA, LLC AND LONI WOODLEY

8

Plaintiff is both surprised and prejudiced by Defendants' failure to produce documents injurious to their case. Plaintiff was forced to incur attorneys' fees in connection with filing this Motion. Further, Plaintiff must now seek leave to amend its Exhibit List to add documents withheld by Plaintiff.

2.   **Ability to Cure the Prejudice.**

At this point, there is no ability to cure the prejudice suffered by Plaintiff. Attorneys' fees have been expended, and while Defendants have the ability to comply with the Requests for Production and subsequent requests for supplementation, they apparently have chosen to not do so. As shown in Exhibit 7 and 7a, there are documents and attachments in Defendants' possession that Defendants have not produced, know they have not produced, and apparently will not produce absent a court order.

3.   **Defendants' Bad Faith.**

Defendants' bad faith in willfully failing to produce responsive documents is obvious and indisputable. Willful failure is defined as "any intentional failure as distinguished from involuntary noncompliance." *Klein-Becker USA, LLC v. Englert,* 711 F.3d 1153, 1159 (10th Cir. 2013) (quotations omitted). As is clear from a review of the documents produced by Defendants as compared to the documents produced by Landreth, Defendants are attempting to hide the proverbial smoking gun.

For example, Landreth produced an email sent at 7:52 p.m. on July 19, 2017, in which he asked Woodley whether Landreth should complete the maintenance items recommended by the Aircraft's manufacturer (Exhibit 8f). Defendants produced Woodley's response, sent at 6:12 a.m. on July 20, 2017, in which he either agrees to or refuses Landreth's various repair requests (Exhibit 10). However, Defendants fail to produce Landreth's response to this email, sent at 9:21 a.m. on July 20, 2017 (only three hours after Woodley's email to Landreth) (Exhibit 8g). The reason for such refusal to produce is clear. In this email, Landreth notifies Woodley:

**PLAINTIFF'S MOTION FOR SANCTIONS OR, ALTERNATIVELY, MOTION TO COMPEL AGAINST DEFENDANTS FLYING CPA, LLC AND LONI WOODLEY**                                                                                                       9

> Considering what I have seen in respect to the lack of detailed maintenance previously performed when this airplane was repaired, I would not trust anything that maintenance shop would tell me…. This airplane was put together (repaired) using 2 different airframes. I have found many parts from both airframes on this one airframe. I know the repair shop put on parts that they cannot know or track where they came from.

(Exhibit 8g.) It strains credulity to believe that Woodley has a 6:12 a.m. July 20 email but has no copy of a 9:21 a.m. July 20 email from the same email string, absent intentional deletion of the email in an effort to avoid discovery. It is clear that Defendants are intentionally withholding documents harmful to their case, especially when reviewing Exhibit 8g in conjunction with another email produced by Landreth but withheld by Defendants, in which Landreth states to Woodley:

> You only let me perform a one day pre-buy inspection. … Even at that I told you that there was possible engine issues, that there were turbo issues, that the exhaust was of the older version, and that inside the belly of the airplane was polluted with dirt and debris from when it was left out in the open in a salvage yard, that there was evidence of water contamination around the electronics, that the control cables were dirty and corroded, that there was repaired damage to the wings, and many other issues…It worries me that I am going to be called forth in front of a FAA review board after you have an incident either due to you not understanding what you are flying or due to you failing to have proper maintenance performed because you want to save money.

(Exhibit 8d). Withholding these two documents alone shows Defendants' bad faith in their incomplete responses to the Requests for Production.

**D.    Plaintiff Requests that the Court Sanction Defendants.**

Fed. R. Civ. P. 26(e) states that a party who has responded to a request for production:

> must supplement or correct its disclosure or response … in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing…"

Further, Rule 37(c)(1)(C) states that, for failure to supplement a response pursuant to Rule 26(e), the Court may impose sanctions, including an award of attorneys' fees and informing the jury of Defendants' failure to produce documents responsive to the Requests for Production. In addition, the Court may enter an order:

    (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

    (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

    (iii) striking pleadings in whole or in part;

    (iv) staying further proceedings until the order is obeyed;

    (v) dismissing the action or proceeding in whole or in part; [or]

    (vi) rendering a default judgment against the disobedient party; …

Rule 37(b)(2)(A)(i)-(vi). Because of the Defendants' knowing and intentional withholding of documents, as set forth above, Plaintiff requests that the Court enter an order (1) informing the jury of Defendants' failure to produce the documents; and (2) pursuant to subsection (i), taking as established that Woodley knew that his representations to Plaintiff about the quality and condition of the Aircraft were false at the time he made them. Such an order directly relates to the documents improperly withheld by Defendants, in that they were attempting to hide evidence of Woodley's knowledge of the true, destroyed condition of the Aircraft at the time he represented to Plaintiff that the Aircraft had "slight wing damage" and had "landed itself" (Exhibit 11). Plaintiff further requests that the Court award as additional sanctions Plaintiff's attorneys' fees incurred in connection with this Motion, in an amount to be determined upon submission of an Application for Attorneys' Fees.

## V. ALTERNATIVE MOTION TO COMPEL

    Alternatively, Plaintiff asks the Court to compel Defendants to produce all computer hard drives used by Woodley to communicate with Landreth, for the purposes of a forensic search of such hard drives for all communications with Landreth regarding the Aircraft from January 2017 through September 2018. Such third-party search is necessary because Defendants have refused to produce documents that clearly exist (*See* Exhibits 7, 7a-i) in clear violation of the Federal Rules of Civil Procedure.

Courts have found such forensic examination necessary when a party fails to produce documents in response to a request for production. In *Macgregor v. MiMedx Grp. Inc.*, 2021 U.S. Dist. LEXIS 40673, 2021 WL 826575 (D.N.M. Mar. 4, 2021), the court ordered forensic examination of a party's cell phone because (1) the party was able to produce text messages pre- and post-dating the ones at issue; (2) he was able to produce messages to other persons within the relevant time frame; and (3) the party had no credible reason for its failure to produce the requested documents. In this case, Defendants produced emails between Landreth and Woodley occurring in March 2017 (Exhibits 7b and 7c), in June 2017 (Exhibit 7d) and again in August 2017 (Exhibit 7i), but they conveniently omit the July 2017 emails detrimental to their position (Exhibits 8d, 8g). In fact, Defendants are able to produce an email from the *same day* and the *same email string* as one of the withheld documents (compare Exhibits 8g and Exhibit 10). While Plaintiff has not requested production of messages to other persons to know whether Defendants have emails from the relevant time period, Defendants certainly cannot concoct a credible reason for its failure to produce the requested documents (or for their failure to produce attachments to the documents they already have produced – *see* Exhibits and 7a-i). *See also Stevens v. Sullum,* 2022, U.S. Dist. LEXIS 163444, 2022 WL 4122195 (M.D. Pa. September 9, 2022) and cases collected therein.[3]

Therefore, Plaintiff requests that the Court order Defendants to submit their computer hard drives to a third-party forensic investigation firm for the purpose of imaging such drives and searching such images only for communications by and between Woodley and Landreth during the relevant time

---

[3] *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 687-88 (S.D. Fla. 2012) (ordering forensic investigation to find electronic information when party refused to adequately search its own records); *Genworth Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443 (D. Conn. 2010) (ordering forensic investigation of computer to find electronically stored information that defendants had withheld from discovery); *Koosharem Corp. v. Spec Personnel, LLC*, 2008 U.S. Dist. LEXIS 108396, 2008 WL 4458864 (D.S.C. Sept. 29, 2008) (ordering forensic investigation when defendant failed to produce relevant documents); *Treppel v. Biovail Corp.*, 249 F.R.D. 111 (S.D.N.Y. 2008) (ordering forensic investigation to recover relevant emails deleted by defendant); *U & I Corp. v. Advanced Med. Design, Inc.*, 251 F.R.D. 667 (M.D. Fla. 2008) (noting that "[i]t is not the court's role, nor that of opposing counsel, to drag a party kicking and screaming through the discovery process" and ordering forensic investigation of computer to find electronically stored information that plaintiff had withheld from discovery).

period of January-September 2017. Such search protects Defendants' privacy as to unrelated information while allowing Plaintiff to obtain all documents that are responsive to its requests for production and relevant to this case. Further, as an additional sanction, Plaintiff requests that such forensic search be done at Defendants' expense, since Defendants are the sole reason such forensic search is needed.

Regarding the costs for the search, many courts, including at least one in the Northern District of Oklahoma, are guided by *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 322 (S.D.N.Y. 2003) as persuasive authority.[4] *See also Herrera v. Las Cruces Auto. Grp. Inc.*, 2022 U.S. Dist. LEXIS 134970, 2022 WL 3009814 (D. N.M. July 29, 2022) ("Other courts in this district have found *Zubulake* to be persuasive authority")(citations omitted). In *Zubulake*, the court applied a seven-factor test to determine apportionment of costs. The factors are:

1. The extent to which the request is specifically tailored to discover relevant information;
2. The availability of such information from other sources;
3. The total cost of production, compared to the amount in controversy;
4. The total cost of production, compared to the resources available to each party;
5. The relative ability of each party to control costs and its incentive to do so;
6. The importance of the issues at stake in the litigation; and
7. The relative benefits to the parties of obtaining the information.

*Zubalake*, 217 F.R.D. at 322. According to *Zubulake*, these factors are not to be treated equally: "When evaluating cost-shifting, the central question must be, does the request impose an undue burden or expense on the responding party? Put another way, how important is the sought-after evidence in

---

[4] *See U.S. ex rel. Sanchez v. AHS Tulsa Reg'l Med. Ctr., LLC*, 2010 US. Dist. LEXIS 155431, 2010 WL 11693225 (N.D. Okla. Aug. 6, 2010) (applying *Zubulake* factors regarding production of inaccessible backup data).

**PLAINTIFF'S MOTION FOR SANCTIONS OR, ALTERNATIVELY, MOTION TO COMPEL AGAINST DEFENDANTS FLYING CPA, LLC AND LONI WOODLEY**     13

comparison to the cost of production?" *Id.* at 322-23. Thus, the first two factors carry greater weight, and the final factor carries the least.

In this case, the *Zubulake* factors clearly show that Defendants should pay for the forensic search. A search can be specifically tailored to obtain only the communications by and between Landreth and Woodley regarding the Aircraft. While some of the documents have been provided by Landreth, presumably he has provided all documents in his possession in response to the subpoena, so there is no other method to obtain the documents. Further, the cost of production is proportional to the amount in controversy in this matter in that the amount in controversy far exceeds to the cost of a forensic search. Defendants could have avoided this cost entirely by producing responsive documents, but apparently had no incentive to do so. The issue of Woodley's knowledge as to the destroyed status of the Aircraft is a critical issue in this litigation for the purposes of Plaintiff's fraud and breach of contract claims. Therefore, the *Zubulake* factors merit a fee shift.

## VI. CONCLUSION

For the reasons stated herein, Plaintiff requests that the Court sanction Defendants as set forth above, or, alternatively, compel Defendants to produce their hard drives for forensic imaging and search, and award it its attorneys' fees and such further relief to which it is justly entitled.

Respectfully submitted,

*/s/ William W. Camp*
William W. Camp
Texas Bar No. 00789196
Rule21a-service@camplaw.com

CAMP TRIAL GROUP
12700 Hillcrest Rd., Suite 125
Dallas, TX 75230
Tel: (214) 638-8400

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

    I hereby certify that I have served a true and accurate copy of this motion upon each attorney of record and the Clerk of the Court on this September 13, 2023.

                                                               */s/ William W. Camp*

Case 4:21-cv-00231-BMJ-JFJ   Document 113 Filed in USDC ND/OK on 09/12/23   Page 15 of 15

**PLAINTIFF'S MOTION FOR SANCTIONS OR, ALTERNATIVELY, MOTION TO COMPEL AGAINST DEFENDANTS FLYING CPA, LLC AND LONI WOODLEY**   15