IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LAND 2 AIR INVESTMENTS, LLC, | ) | |
| As successor entity by conversion to | ) | |
| LAND 2 AIR INVESTMENTSLP and as | ) | |
| Successor to LAND 2 AIR INVESTMENTS | ) | |
| LLP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.:  CIV-21-231-BMJ -JFJ |
| | ) | |
| vs. | ) | |
| | ) | |
| FLYING CPA, LLC, | ) | |
| LONI WOODLEY, and | ) | |
| SAKER AVIATION SERVICES CO., | ) | |
| | ) | |
| Defendants. | ) | |

**FLYING CPA/ WOODLEY'S RESPONSE TO PLAINTIFF'S COMBINED MOTION
FOR SANCTIONS AND MOTION TO COMPEL [Doc. 113]**

COME NOW the Defendants, Flying CPA, LLC and Loni Woodley (collectively referred to herein as "Defendants") by and through their attorneys of record and hereby responds to Plaintiff's *Motion for Sanctions or, Alternatively, Motion to Compel* [Doc. 113] (the "Motion"). This Court should deny Plaintiff's Motion and award Defendant's a reasonable attorney's fee for Plaintiff's vexatious filing.  In support, Defendants state as follows:

**PLAINTIFF DID NOT CONDUCT A MANDATORY MEET-AND-CONFER**

This Motion must be dismissed because Plaintiff has ignored the Court's local rules requiring a meet-and-confer prior to filing any discovery motion.  Plaintiff's certification to the contrary is false.  Without giving prior notice, Plaintiff's counsel called the undersigned's office twice on August 30, 2023 and left voice messages demanding a meet and confer ahead of filing a

motion for sanctions for unspecified reasons.[1]  The undersigned was out of the office and unable to respond until the following day.  On August 31, 2023, the undersigned responded to Plaintiff's counsel by email and notified Plaintiff's counsel that he was not in the office and requested a list of alleged deficiencies so that a good faith meet and confer could occur.  *See* Aug. 31, 2023 email from Troy J. McPherson to William W. Camp, attached hereto as **Exhibit 1**.  This email was ignored and no list of deficiencies was provided.

On September 5, 2023, former counsel for Plaintiff, Danise McMahon, again requested a time for a conference on unspecified "discovery issues" without any reference to the email sent on August 31, 2023.  The undersigned referred counsel to Defendants' request for a written identification of the perceived discovery deficiencies to allow for a good faith discussion to attempt to resolve the issue.  *See* Sept. 5, 2023 correspondence between Troy J. McPherson and Danise McMahon, attached hereto as **Exhibit 2**.  McMahon (now withdrawn as counsel for Plaintiff [Doc. 111]) responded with a demand that a meet and confer must happen before 5 p.m. on the same day, or Plaintiff would file a motion for sanctions.  *See id.*  The undersigned again reiterated that a list of perceived deficiencies was necessary to conduct a good faith conference, as it was ambiguous what Plaintiff's counsel was demanding, so it was unclear whether there was any actual dispute about amending or supplementing Defendants' discovery responses or production.  *Id.*

McMahon finally provided a list of documents alleged to be outstanding from Defendant's document production—email correspondence between Mr. Woodley and Plaintiff's witness, David Landreth, that had already been produced by Landreth in response to a document production subpoena *issued by Defendants*, which were uploaded by Landreth's attorney to a shared OneDrive

---

[1] Notably, the voicemails consisted of Plaintiff's counsel reading from the already-drafted motion regarding his request to deem FCPA/ Woodley in default.

folder to which Plaintiff's attorneys had access at the same time as Defendants in the week before Landreth's deposition. *See id.*

The next day, after investigating Plaintiff's alleged deficiencies, the undersigned responded and noted that the correspondence between Mr. Woodley and Landreth were already in the hands of Plaintiff. *See* Sept. 6, 2023 email from Troy. J. McPherson to Danise McMahon, attached hereto as **Exhibit 3**. The undersigned also identified by Bates label where the requested documents could be found in the *Plaintiff's* document production as well as Landreth's subpoena response. *See id.* Later that day, the undersigned found that there was an additional attachment that had been produced in Defendants' initial disclosures. The undersigned provided this attachment to Plaintiff in a separate correspondence. *See* Sept. 6 supplemental email from Troy J. McPherson to Danise McMahon, attached hereto as **Exhibit 4**. Plaintiff's counsel never responded to these emails before filing the Motion or made any further attempt to confer. Accordingly, Plaintiff failed to confer in good faith prior to filing the combined Motion, and the Motion should be denied and Defendants allowed their reasonable attorney fees expended responding to Plaintiff's Motion.

## **INTRODUCTION**

Plaintiff's position appears to be that, although it received all of the email correspondence it is presently concerned with through *Defendant's* subpoena to Landreth before his deposition or in Plaintiff's own document production, because Defendants did not produce them (because Defendants did not have all of their email correspondence with Landreth from 2017 and needed to issue a subpoena to Landreth to secure the balance), Defendants engaged in sanctionable conduct. On this basis, Plaintiff asserts Defendants should be deemed to be in default—the death penalty sanction—or the Court should order an invasive and post-discovery forensic examination of

Defendants' electronic devices without a prior discovery order.  On review of the relevant Federal Rules of Civil Procedure and the relevant case law, there is zero merit to Plaintiff's complaints.

Plaintiff identified Landreth, Defendants' former aviation mechanic, as the central witness against Defendants in the Complaint.  *See* Doc. 2 at ¶¶ 39–43.  However, from the date of its filing of this action to approximately one month before the discovery deadline, Plaintiff issued no written discovery on the parties or any third parties (including Plaintiff's own witness, Landreth) until July 5, 2023, when Plaintiff issued its only set of discovery requests to Defendants.  Defendants responded to these requests on August 7, 2023 and provided all known responsive documents in their possession and control on August 10, 2023.[2]  Following Plaintiff's surprising inclusion of an accusatory affidavit from Landreth with Plaintiff's Response to Defendants' Motion for Summary Judgment substantially contradicting his email correspondence with Defendants and the subject aircraft's log book entries, Defendants secured leave of court to extend the discovery deadline and issued deposition and document production subpoenas to Landreth.

On August 18, 2023, Landreth produced document in response to the subpoena, which were contemporaneously made available to Plaintiff and Defendants.  Additionally, while preparing for Landreth's deposition, Defendants discovered several additional responsive emails that had mistakenly not been produced on August 10, 2023.  To ensure that Plaintiff had all of the emails in Defendants' possession in hand prior to Landreth's deposition, FCPA/ Woodley produced those emails the same day.  Landreth's deposition was not scheduled until the following Tuesday.  Discovery then closed on August 22, 2023.

---

[2] Prior to formally producing the documents, Defendants informally produced the documents to Plaintiff's counsel to allow Plaintiff to complete its objections to Defendants' Final Exhibit List. Plaintiff did not have all of the documents listed by Defendants due to its conducting no written discovery until after Defendants' final exhibit list deadline.

There is no question that Plaintiff received all of the email correspondence known to exist between its long-identified key witness and the Defendants before Landreth's August 22, 2023 deposition. Any emails that were not produced directly by Defendants were subsequently produced by Landreth in response to Defendants' subpoena. Defendants did not have all the largely 2017 emails with Landreth in their possession to respond to Plaintiff's 2023 discovery requests—which exculpate Defendants from Plaintiff's claims in this case because Landreth—Plaintiff's key witness leveling express allegations of fraud against Defendants—clearly and repeatedly informed Defendants that the aircraft was safe and airworthy during Defendants' ownership of the aircraft—materially and directly contradicting his affidavit submitted by Plaintiff. *See* June 9, 2017 Email from Landreth to Defendants, attached as **Exhibit 5**. At Landreth's August 22, 2023 deposition, Plaintiff relied on these very emails—which they now allege were insufficient—to examine Landreth.[3] There has been no prejudice to Plaintiff or any discernable violation of the Federal Rules of Civil Procedure by Defendants. Ultimately, Plaintiff has all of the documents allegedly giving rise to their demand for death penalty sanctions against Defendants. Plaintiff used the documents to prosecute its claims. Finally, Plaintiff had nearly two years to conduct discovery and subpoena the records itself to support its claims and avoid submitting a sham affidavit by a witness essential to Plaintiff's case against Defendants, but it simply chose not to do so until now—after the discovery deadline and on the eve of pretrial. For these reasons, Plaintiff's should be denied.

Plaintiff alternatively argues that discovery should be reopened to obtain these documents that Plaintiff already has in its possession, and that the Court should award extraordinary relief (in

---

[3] Plaintiff's counsel threatened to file a motion for sanctions against Defendants for unspecified reasons on the record during the deposition. *See* Dep. of David Landreth, at 72:23–74:5, attached hereto as **Exhibit 6**.

the absence of an order previously compelling the discovery) to confiscate Defendants' electronic devices to have a third party expert conduct a forensic fishing expedition seeking some ill-defined alleged "smoking gun" evidence and somehow resurrect Plaintiff's deficient claims against Defendants. This request has absolutely no merit and should similarly be denied.

## ARGUMENTS AND AUTHORITIES

### I.    Applicable rules and standard for sanctions.

The rules applicable to Plaintiff's request for sanctions are found in FED. R. CIV. P. 37[4] and FED. R. CIV. P. 26. Plaintiff appears to be making a request for sanctions under the guise that Defendants did not properly supplement their discovery responses. Rule 37, in pertinent part reads: "If a party fail to provide information. . . as required by Rule 26. . .(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This section also provides that the Court may in addition to, or alternatively award sanctions pursuant to Rule 37(b)(2)(A). Plaintiff's sought relief against Defendants is located in Rule 37(b). Plaintiff asserts these heavy sanctions are warranted in this case because of Defendants allegedly committed discovery fraud and/or failing to produce evidence or supplement discovery.

The plain language of Rule 37 requires a finding that Defendants violated Rule 26 in order to sustain a request for sanctions. Rule 26(e)(1) states that "[a] party who has . . . responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: (A) in a timely manner *if the party learns that in some material respect the disclosure or response is incomplete or incorrect*, and *if the additional or corrective information*

---

[4] Plaintiff states that they are requesting sanctions pursuant to Rule 31. It is believed that this is a scrivener's error as the relief requested in found in Rule 37.

*has not otherwise been made known to the other parties during the discovery process or in writing*[.]" Fed. R. Civ. P. 26(e)(1) (emphasis added).  A reading of the rules in conjunction indicates that sanctions under Rule 37 are only appropriate when there has been a knowing failure to supplement AND the claimed missing documents were not made known to the other parties during discovery.  The Motion cannot meet either of these elements.  Indeed, the very basis of the Motion is that Defendants did not produce emails that were later produced by Landreth in response to Defendants' subpoena.

Even if the Court were to find that a Rule 26 violation occurred, there is an heavy evidentiary burden on the proponent for imposing sanctions.  If the non-moving party can show that the violation was substantially justified or harmless, sanctions are not warranted.  *Okla. Land Holdings, LLC v. BMR II, LLC*, Case No. CIV-17-1036-D, 2021 U.S. Dist. LEXIS 247984, at *4 (W.D. Okla. Dec. 30, 2021)(DeGiusti, J.). Factors to be considered by the Court include: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) ability of the party to cure the prejudice; (3) extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F. 3d 985, 993 (10th Cir. 1999).  Where, as here, the sanction requested would effectively result in a default judgment, district courts have been admonished to "carefully explore and consider the efficacy of less drastic alternatives, ordinarily reserve the extreme sanction of dismissal for cases involving bad faith or willfulness or instances where less severe sanctions would obviously prove futile." *HCG Platinum, LLC v. Preferred Prod. Placement Corp.,* 873 F.3d 1191, 1206 (10th Cir. 2017).  Under these standards, sanctions against Defendants are not warranted.

## II.    There has been no violation of Rule 26(e).

FCPA/ Woodley has not knowingly violated any duty to supplement its document production.  Rule 26(e) is violated when a party learns that a response is incomplete or incorrect and does not supplement in a timely manner.  Fed. R. Civ. P. 26(e)(1).  Even if there is not a timely supplementation, if the additional or corrective information is made known to the other parties during the discovery process or in writing, there is no violation.  *Id.*  A cursory review of the timeline in this dispute plainly shows that (1) Defendants produced and then supplemented their discovery in a timely manner; and (2) all of the documents pertaining to Defendants and Landreth were in Plaintiff's possession on August 18, 2023—before Landreth's deposition.

Plaintiff filed its lawsuit on May 27, 2021.  Defendants submitted their answer on June 28, 2021.   At the time the lawsuit was served, Defendants recognized the import of the communications between Defendants and Landreth to this case.  Contrary to Plaintiff's contention of a "smoking gun" being contained in the documents, the correspondence between Defendants and Landreth is highly exculpatory.  Defendants immediately preserved all of the correspondence they could find between Defendants and Landreth in order to defend this case.  However, Plaintiff thereafter performed no written discovery seeking the production these emails until July 2023—more than two years after filing the suit and more than six years after the emails were originally exchanged.

Defendants produced each and every piece of email correspondence in their possession known to exist on August 10, 2023, and Defendants supplemented this production on August 18, 2023 when they learned that several non-material emails had been inadvertently omitted from the first set of production. To ensure that all the documents that remained in existence were available for Landreth's deposition, Defendants also issued a subpoena to Landreth requesting production

of his set of emails.  These emails were also produced to all parties on August 18, 2023.  Defendants produced everything in their possession, and any outstanding emails were produced by Landreth. Plaintiff had a complete set of email correspondence between Landreth and Mr. Woodley on August 18, 2023 before Landreth's August 22, 2023 deposition notwithstanding Plaintiff's lengthy delay in conducting discovery.  Plaintiffs have afforded the Court with no evidence that Defendants knowingly failed to supplement their production—as Defendants produced all of the old emails that Defendants could find in their possession.  Further, the missing emails were "made known to [Plaintiff] during the discovery process" through Landreth's production of documents in response to Defendants' subpoena *duces tecum*.  Plaintiff has failed to show that Defendants violated Rule 26—much less any evidence of a knowledgeable or intentional failure to supplement.

### III.    Any violation by FCPA/ Woodley was substantially justified or harmless.

Courts apply the *Woodworker's* factors to determine whether a Rule 26 is substantially justified or harmless.  *Okla. Land Holdings, LLC*, 2021 U.S. Dist. LEXIS 247984, at *4.  These four factors are: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) ability of the party to cure the prejudice; (3) extent to which introducing such testimony would disrupt the trial; and (4) the [offending party's] bad faith or willfulness."  *See id.* (internal brackets added).  Each of these factors weigh in favor of a finding that any violation was substantially justified or harmless.

### a.    *Plaintiff is not prejudiced by a Rule 26 violation in this instance.*

There is no prejudice or surprise to Plaintiff as a result of Landreth's production versus Defendants' production.  Plaintiff has known about Landreth and the import of his written communications with Defendants from the initiation of this lawsuit.  Plaintiff could have sent its own subpoena to Landreth if it believed that Landreth's documents—including maintenance

records for the subject aircraft—were critical to its litigation strategy.  Plaintiff chose not to do that—or anything—until the eve of discovery two and a half years later when it issued its first set of discovery to Defendants.  The earliest date, therefore, for providing emails in Defendants' possession between Mr. Woodley and Landreth was August 10, 2023.  Defendants produced all the emails that remained in their possession and control at that time.  Eight days later, Landreth produced his set of emails pursuant to the subpoena issued by Defendants ahead of his deposition. However, before the production of these emails, Plaintiff had already submitted Landreth's affidavit to the Court alleging that Mr. Woodley made false representations to Plaintiff because he allegedly knew that the subject airplane was destroyed.  This is flatly contradicted by Landreth's written correspondence with Defendants.  *See* **EX 5**.  The eight-day gap between Defendants' production and Landreth's production also had no detrimental effect on Plaintiff's litigation strategy, as Plaintiff had already relied on Landreth's false statements in the affidavit without making any attempt to discover the significant number of written communications between Landreth and Defendants contradicting those statements before Plaintiff submitted the affidavit to the Court.

In the Motion, Plaintiff also offers zero evidence of prejudice or surprise and simply states that it did sustain some ill-defined prejudice and surprise apparently by incurring fees to file the Motion.  Plaintiff also states that it "must now seek leave to amend its Exhibit List to add documents withheld by Plaintiff[sic]".  *See* Motion, p. 9.  Plaintiff's Exhibit List was due on June 20, 2023 and filed on July 26, 2023 with leave of court.  As discussed above, neither Landreth's subpoena response nor Defendants' discovery responses were due before this this deadline.  Both were received after the deadline.  Requesting leave of court to add additional exhibits that were exchanged during discovery after a scheduling deadline is not prejudicial or surprising.  In fact,

both Plaintiff and Defendants requested and received leave to amend their exhibit lists to include additional documents received in discovery.

The relevant case law also supports a finding of no prejudice to Plaintiff.  In *Okla. Land Holdings, LLC*, the plaintiff failed to supplement its initial disclosures regarding its calculation of damages after its principal expert's testimony was excluded through *Daubert* motions.  *Okla. Land Holdings, LLC*, 2021 U.S. Dist. LEXIS 247984, at **2–3.  The defendants moved to strike all the plaintiff's evidence on damages—which would have effectively ended the case.  *Id.*  When applying the *Woodworker's* factors, the Court noted that there is no prejudice because the defendants were aware of the damages evidence for several years and were aware of the basis for plaintiff's calculation.  *See id.* at *5.  Likewise, here, there is no question that Plaintiff was aware of the import of Landreth's testimony when it filed the present lawsuit and relied on his alleged statements.  Plaintiff was never forced to change its trial strategy,  and in fact to this date Plaintiff consistently maintains the position that Landreth told Mr. Woodley about the allegedly "destroyed" condition of the aircraft prior to Defendants' sale of the aircraft to Plaintiff.  This, even in the face of Landreth's emails to Defendants contradicting that assertion.

Similarly, in *Lexington Ins. Co. v. Newbern Fabricating, Inc.*, a dispute arose when an interrogatory response was supplemented thirty days after a party became aware of new responsive information.  Case No. 14-cv-610-CVE-TLW, 2016 U.S. Dist. LEXIS 160593, at *7 (Jun. 16, 2016 N.D. Okla.)(Wilson, J.).  Judge Wilson found that the 30-day time period was not unreasonable and that all of the information in the supplement was already made available to the moving party through the course of discovery.  *Id.* at *8.  The *Lexington* Court's analysis ended with this prong because "failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure."  *Id.* (quoting *Oklahoma. v. Tyson Foods, Inc.*, 262 F.R.D. 617,

636 (N.D. Okla. 2009); *Nguyen v. IBP, Inc*., 162 F.R.D. 675, 680 (D. Kan. 1995). In sum, Plaintiff has not shown any discernable prejudice that would arguably militate a correction through sanctions by the Court.

    *b.  Ability to cure prejudice.*

Plaintiff's motion is bereft of any cognizable argument for why any prejudice could not be cured. Plaintiff again rests on its assertion that the fact that it expended attorney's fees in preparing the Motion, then there can be no cure. Once again, Plaintiff's position is unwarranted. The *Okla. Land Holdings, LLC* Court noted that any prejudice to a movant for a failure to supplement is both minimal and can be cured by an order compelling supplementation when the evidence is known to the moving party. *Id.* at *6. Also notable regarding this factor is the fact that Plaintiff has the documents it is requesting Defendants to re-produce. Moreover, Plaintiff already used the documents during the deposition of Landreth.

    *c.  No disruption to the Court's trial schedule.*

Plaintiff ignores this necessary factor. Likely because it is fully aware that there is no disruption to the Court's trial schedule by the eight (8) day gap between Defendants' production and Landreth's document subpoena response. Both Plaintiff and Defendants have since moved to supplement their exhibit lists with the newly obtained documents.

    *d.  FCPA/ Woodley did not engage in bad faith.*

Plaintiff argues that Defendants engaged in bad faith by "willfully failing to produce responsive documents". *See* Motion, p. 9. However, Plaintiff provides no evidence or explanation of such bad faith although it is apparently "obvious and indisputable." *Id.* Plaintiff notably fails to inform the Court, in any part of thee Motion, that the only reason that Plaintiff had the documents for Landreth's deposition and to supplement its exhibit list is because those documents were

obtained by a subpoena issued by Defendants. Plaintiff's contention appears to be that it is bad faith for Defendants not to now re-produce emails which Plaintiff already has. Defendants already produced the documents they had within their possession and control by August 18, 2023. Defendants issued a subpoena to Landreth for Landreth's communications to Mr. Woodley, which Defendants did not have in their possession. Those documents were produced to both parties on August 18, 2023.

Because each of the *Woodworker's* factors weigh in favor of a finding that, if in fact there was any Rule 26 supplementation violation by Defendants, it was substantially justified or harmless, and no sanctions should be imposed on Defendants.

**IV. Even if the Court believes some sanction is warranted, Plaintiff's sanction requests are unreasonable.**

Plaintiff requests that this Court enter an Order (1) informing the jury that Defendants failed to produce documents; and (2) judicially establish that Mr. Woodley knew that representations made to Plaintiff about the quality and condition of the subject airplane were false at the time the representations were made. These sanctions in essence amount to a judicial death penalty that would result in a judgment in favor of Plaintiff. The Tenth Circuit provides additional guidance to district courts when a sanction requested would result in a dismissal of a case. *See Okla. Land Holdings, LLC*, 2016 U.S. Dist. LEXIS 247984, at **4–5. Specifically, "where the exclusion of evidence under Rule 37(c)(1) has the necessary effect of a dismissal, as here, district courts should, in conjunction with the traditional *Woodworker's* inquiry, carefully explore and consider the efficacy of less drastic alternatives, ordinarily reserving the extreme sanction of dismissal for cases involving bad faith or willfulness or instances where less severe sanctions would obviously prove futile." *HGC Platinum, LLC v. Preferred Prod. Placement Corp.,* 873 F.3d 1191, 1206 (10th Cir. 2017).

The Tenth Circuit has explained that a lesser-sanction inquiry is necessary because the American legal system favors the disposition of cases on the merits and dismissal is a sanction of last resort. *Id.* at 1205 (citing with favor *Bonds v. Dist. Of Columbia,* 93 F.3d 801, 808 (D.C. Cir. 1996) ("Particularly in the context of litigation-ending sanctions, we have insisted that '[s]ince our system favors the disposition of cases on the merits, dismissal is a sanction of last resort to be applied only after less dire alternatives have been explored without success' or would obviously prove futile.").

Here, even if sanctions are warranted, the facts do not call for any sanction that ends this litigation in favor of Plaintiff. As discussed above, Plaintiff has not shown that Defendant engaged in any knowing violation of the Federal Rules of Civil Procedure or in bad faith. In addition, the records produced by Landreth do not, by themselves, support the conclusions proffered by Plaintiff that the records are "smoking gun" evidence of fraud. In actuality, the records and direct testimony from Landreth are exculpatory and demonstrate that Landreth never considered the plane to be unsafe to fly, never considered the plane to be "destroyed", and certainly never told Defendants that the aircraft was unsafe to fly. Even if sanctions are somehow warranted, the records and evidence itself does not support a judicial finding of a false representation by Defendants. Ultimately, although Plaintiff already has the records, if it were so inclined given the late stage of this case, the Court could enter a lesser sanction compelling the production of the communication and avoid litigation-ending sanctions. While it remains unclear from Plaintiff's Motion what conduct by Defendants should be corrected or deterred in the future, clearly there are sanctions available to the Court that do not amount to default or adverse jury instruction against Defendants.

## V.     Plaintiff's request to confiscate and forensically search FCPA/ Woodley's electronic devices must be denied.

In addition to seeking litigation-ending sanctions, Plaintiff alternatively seeks to confiscate Defendants' electronic devices for purposes of conducting an expensive fishing expedition. This request has no basis in law or fact, and it would necessarily require the parties to engage in additional expert discovery. Discovery closed in this matter on August 22, 2023. To reopen it now would certainly be more prejudicial to Defendants than it would have any probative value to Plaintiff, who already are in possession of the evidence. Further, Plaintiff is seeking an order compelling redundant discovery.

The Northern District has dealt with similar issues of requests for redundant production. In *Mafille v. Kaiser-Francis Oil Co.*, the defendant subpoenaed Google for emails between the plaintiffs involving trade secrets. Case No. 18-CV-586-TCK-FHM, U.S. Dist. LEXIS 73424, at **7–8 (N.D. Okla. May 1, 2019) (McCarthy, J.). The court quashed the subpoena because the defendants already had access to email communications on its own system and from a third-party company that was related to the alleged disclosure of trade secrets. *Id.* The Court found that "further production from gmail accounts will result in redundant production of the same information. The court is not persuaded that the needs of the case require redundant production." *Id.*

We are faced with the exact same situation here. Plaintiff has a complete set of communication provided by Landreth and Defendants. Conducting a fishing expedition through Defendants' devices months after discovery closed and within mere weeks of the scheduled pretrial would be counterproductive, unnecessary, and result in significant costs to the parties for no material benefit on the merits to any party. This Court should deny Plaintiff's alternative motion seeking an order compelling additional production from Defendants.

## VI.    FCPA/ Woodley should be awarded attorney's fees for defending this vexatious motion for sanctions.

Plaintiff has filed a motion to compel after the discovery deadline has passed and without engaging in a good faith meet-and-confer. The Motion should be denied. In the event the Motion is denied, Defendants are entitled to their fees and costs incurred pursuant to Rule 37(a)(5)(B). The Rule states that "if the motion is denied, the court . . . must . . . require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." For the reasons stated above, Plaintiff's motion is, without question, unjustified and unsupported.

As detailed above, Plaintiff had a complete set of communications between Landreth and Defendants on August 18, 2023. Additionally, precedent to a good faith meet and confer, Defendants attempted to assuage Plaintiff's concerns and even identified the Bates labels of the already-produced documents to Plaintiff on September 6, 2023. Instead of either responding to this communication seeking additional production or clarifying its legal position so that Defendants could further respond, Plaintiff filed this Motion providing a false certification that Plaintiff engaged in a "sincere attempt to resolve differences" before filing the Motion. *See* LCvR37-1. Because the Motion is not supported neither by law or fact, and Defendant has been forced to respond to this vexatious filing, Defendant should be awarded its fees and costs incurred in defending the Motion.

## <u>CONCLUSION</u>

WHEREFORE, premises considered, Defendants Flying CPA, LLC and Loni Woodley respectfully request that this Court deny Plaintiff's Motion for Sanctions and Alternative Motion to Compel in its entirety.

Respectfully submitted,

**LATHAM, KEELE, LEHMAN, RATCLIFF, CARTER & CLARKE, P.C.**

/s/ Troy J. McPherson
Marcus N. Ratcliff, OBA No. 19201
mratcliff@law-lsl.com
Troy J. McPherson, OBA No. 32071
tmcpherson@law-lsl.com
Carter A. Fox, OBA No. 34655
cfox@law-lsl.com
1515 E. 71st Street, Suite 200
Tulsa, Oklahoma 74136
Telephone:  918-970-2000
Facsimile:  918-970-2002
*Attorneys for Flying CPA & Loni Woodley*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 18, 2023, a true and correct copy of the above and foregoing instrument was served on the below counsel of record via ECF filing.

William W. Camp
Camp Trial Group
8445 Freeport Parkway, Suite 150
Irving, TX 75063

Lewis N. Carter
Doerner  Saunders  Daniel  &  Anderson
LLP
Two West Second Street, Suite 700
Tulsa, OK 74103
***Attorneys for Plaintiff***
***Land 2 Air Investments LLC***
*Attorneys for Plaintiff*

David A. Thompson
Thompson Law LLC
P.O. Box 42
Creede, CO 8130
David@PilotAttorney.net
*Attorney for Defendant,*
*Saker Aviation Services, Inc.*

   */s/ Carter A. Fox*

17