**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| LAND 2 AIR INVESTMENTS, LLC, | ) | |
| As successor entity by conversion to | ) | |
| LAND 2 AIR INVESTMENTS, LP and as | ) | |
| Successor to LAND 2 AIR INVESTMENTS | ) | |
| LLP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.:  CIV-21-231-BMJ -JFJ |
| | ) | |
| vs. | ) | |
| | ) | |
| FLYING CPA, LLC, | ) | |
| LONI WOODLEY, and | ) | |
| SAKER AVIATION SERVICES CO., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS FLYING CPA, LLC, AND LONI WOODLEY'S**
**MOTION IN LIMINES AND BRIEF IN SUPPORT**

COME NOW the Defendants, Flying CPA, LLC, and Loni Woodley (collectively referred to herein as "Defendants") by and through their attorneys of record and moves this Court to enter the following pretrial Orders *in Limine* prohibiting Plaintiff, Plaintiff's counsel and any witness from introducing evidence, comment or argument, by way of deposition testimony, live testimony, exhibit or otherwise, regarding the following:

(1)     Evidence of liability insurance.

(2)     Evidence of settlement negotiations between the parties.

(3)     Witnesses or exhibits not listed on the Pre-Trial Order.

(4)     Evidence of Defendants filing of or this Court's ruling upon any Motion *in Limine*.

(5)     Evidence of Defendants' discovery objections.

(6)     Evidence of hearsay statements.

(7)    "Golden Rule," "Send a Message," and "Reptile Theory" arguments.

(8)    Requests for production of items from Defendants, Defendants' counsel, or Defendants' witnesses in the presence of the jury.

(9)    Witnesses identified but not testifying.

(10)    Excessive and cumulative exhibits and witnesses.

(11)    Expert testimony by lay witnesses.

(12)    Testimony regarding amount of actual damages.

(13)    Testimony outside the scope of Plaintiff's Rule 26 Report and Disclosures.

(14)    Cirrus attrited list.

(15)    Emails between David Landreth and Loni Woodley concerning payment dispute.

(16)    Cirrus work order dated May 1, 2020.

(17)    Cirrus logbook entry.

(18)    Cirrus database accident reports by Brannon D. Mayer.

(19)    Land 2 Air emails with Cirrus.

(20)    Aircraft payment documentation.

(21)    Photographs of the Damaged Aircraft - Cirrus.

(22)    Summary board of damages.

(23)    Plaintiff's invoices.

(24)    Compliance report dated March 3, 2023.

(25)    Photographs of the damaged Aircraft labeled by David Farmer.

(26)    Letters from FAA "grounding aircraft" and to FAA "turning in registration".

## **INTRODUCTION**

In the Spring of 2019, Flying CPA sold a used small single-engine aircraft to Plaintiff. After causing a pre-buy inspection to be had, conducting due diligence, reviewing the logbooks, and flying the plane for several months after closing the sale, Plaintiff was informed by the manufacturer of the airplane that it internally considered the subject airplane to be "destroyed" because it had been involved in a suicide attempt and crash-landed in the desert. Admittedly, any of the issues raised by the manufacturer should have been found during the pre-buy inspection. And, after conducting discovery, it became clear that the manufacturer did not follow the proper procedure to initiate the process by which a plane could be declared "destroyed" or "scrapped" by the FAA.

Since it filed its lawsuit, Plaintiff has consistently taken the position that the subject airplane was "totally destroyed" at the time of closing under applicable FAA regulations which thereby rendered FCPA/Woodley in breach of the Purchase and Sale Agreement ("PSA"). Plaintiff now does an about-face and sets forth a brand new argument—that "destroyed" actually is afforded its plain and ordinary meaning of the word and that FCPA/Woodley is in breach of the PSA.

Plaintiff's argument rests on an interpretation of the risk of loss provision found in the PSA dealing with what happens in a situation in which a Seller cannot perform. Essentially, Plaintiff argues that the subject airplane was "destroyed" according to its plain meaning at the time FCPA/Woodley contracted to sell the plane and that therefore FCPA/Woodley did not adequately perform when it provided the plane to Plaintiff. Plaintiff's argument is flawed for multiple reasons. First, Plaintiff unequivocally accepted the subject airplane and flew it for months without issues. When a party accepts non-conforming goods, the party must provide

notice of the non-conformity to the breaching party or the party is barred from any remedy. And, in Oklahoma, the risk of loss passes to the buyer when the buyer accepts the goods.

Furthermore, in Oklahoma although contract terms are ordinarily given their plain meaning, when a term has a technical or special meaning, the technical or special meaning of the term governs the contract. Plaintiff has litigated this case as if the term "destroyed" had a special meaning for years. Plaintiff should not be permitted to shift the goalposts of this litigation just because its own experts and the discovery conducted thus far demonstrate that the subject plane was not, and is not "destroyed" pursuant to the FAA regulations.

### ARGUMENT AND AUTHORITIES

The purpose of a ruling *in limine* is to keep prejudicial evidence from being heard by the jury when a curative instruction would not overcome the harm caused by the jury hearing the evidence. The evidence set forth herein should be prohibited from being introduced at the jury trial of this matter pursuant to the Federal Rules of Evidence.

Through motions *in limine*, the Court has the authority to limit the evidence presented to that which is relevant. Relevant evidence is any evidence tending to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Fed. R. Evid. 401. Evidence which is not relevant is not admissible. *See* Fed. R. Evid. 402.

Even if evidence is relevant under Fed. R. Evid. 401 or 402, the Court must still exclude evidence "if its probative value is substantially outweighed by the danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needless presenting cumulative evidence." Fed. R. Evid. 403. The Tenth Circuit has noted that:

The trial judge is the gatekeeper under the Rules of Evidence. Rule 403 requires courts to "exclude[e] [even relevant evidence] if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Such circumstances might arise when evidence suggests to the jury that it should "render its findings on an improper basis, commonly . . . an emotional one," and when "circumstantial evidence would tend to sidetrack the jury into consideration of factual disputes only tangentially related to the fact at issue in the current case. (internal citations omitted).

*United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007).

As set forth below, the following evidence and testimony should be excluded in this case.

## I.    Evidence of Liability Insurance.

The Federal Rules of Evidence prohibit the admissibility of the existence of liability insurance to prove "whether the person acted negligently or otherwise wrongfully." Fed. R. Evid. 411. Counsel for both parties have an affirmative duty to prevent the mention of liability insurance at trial. Due to the extremely prejudicial nature of such evidence, introduction of evidence of liability insurance is impermissible pursuant to Fed. R. Evid. 411. *Wright v. Burlington Northern Santa Fe Ry.*, 2016 U.S. Dist. LEXIS 54029, *14-15 (N.D. Okla. Apr. 22, 2016).

This Court should enter an Order *in Limine* prohibiting the introduction of evidence of liability insurance at trial, including any exhibits that reference liability insurance.

## II.    Evidence of Settlement Negotiations Between the Parties.

Any reference to settlement negotiations between the parties is expressly prohibited pursuant to Fed. R. Evid. 408 and must be excluded from trial.

## III.    Witnesses or Exhibits not Listed on the Pre-Trial Order.

All witnesses and exhibits must be identified in the Pre-Trial scheduling Order. Any attempt by Plaintiff to endorse or call additional witnesses or exhibits should be prohibited by

this Court and the failure to obey a scheduling order authorizes the court to impose sanctions. Fed. R. Civ. P. 16(f)(1)(C); Fed. R. Civ. P. 37(b)(2)(A)(ii), (iv).

IV.    **Evidence of Defendants' Filing of or This Court's Ruling Upon any Motion *in Limine*.**

The Plaintiff, Plaintiff's counsel, and witnesses should be prevented from making any reference to Defendants' Motions *in Limine* or this Court's rulings thereon. This evidence is irrelevant and unfairly prejudicial to Defendants, and it should be excluded pursuant to Fed. R. Evid. 401-403.

V.    **Evidence of Defendants' Discovery Objections.**

Plaintiff may attempt to introduce Defendants' discovery responses at trial. Within these responses, Defendants asserted valid objections to the information and documents being sought. Defendants' objections should be excluded from trial because they are irrelevant to the issues before the jury, and any probative value of this evidence is substantially outweighed by the prejudicial effect on Defendants. Fed. R. Evid. 401-403.

If the Court determines that the Plaintiff should be allowed to introduce these responses, Defendants respectfully request that this Court enter an order: (1) directing Plaintiff's counsel to first approach the bench prior to introducing such evidence; (2) specifically identify which discovery response they seek to introduce; (3) allow Defendants to reassert objections.

VI.    **Evidence of Hearsay Statements.**

Any out of court statements by Plaintiff, Plaintiff's Counsel, or Plaintiff's witnesses offered to prove the truth of the matter asserted must be excluded pursuant to Fed. R. Evid. 802.

VII.    **"Golden Rule," "Send a Message," and "Reptile Theory" Arguments.**

Any reference or argument to the jury seeking to apply the "Golden Rule," by asking the jury to put themselves in the shoes of the Plaintiff, or any similar argument, should be excluded.

Such arguments or references should be excluded because they are irrelevant to the resolution of any material fact, serve to improperly inflame the jury, and have a tendency to confuse and mislead the jury. Fed. R. Evid. 401-403. In addition, such arguments ask the jury to consider the case from an improper viewpoint. *Moody v. Ford Motor Co.*, 506 F. Supp. 2d 823 (N.D. Okla. Mar. 20, 2007) (citing *Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir. 1983) (stating that "[T]his court has forbidden plaintiff's counsel to explicitly request a jury to place themselves in the plaintiff's position and do unto him as they would have him do unto them. The rule's purpose is to reduce the risk of a jury decision based on emotion rather than trial evidence."); *Blevins v. Cessna Aircraft Co.*, 728 F.2d 1576, 1580 (10th Cir. 1984) (noting that a "Golden Rule appeal is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.").

As an extension of Golden Rule type arguments, courts also recognize that it is improper to ask the jury to "send a message" to the defendants or others in the community when determining compensatory damages. *See Moody*, 506 F. Supp. 2d 823 (ordering a new trial in part because of plaintiff's direct references to accountability and "sending a message" led to the conclusion that the jury's noneconomic damage award was partially punitive in nature); *Higgins v. State Auto Prop. & Cas. Ins. Co.*, 2012 U.S. Dist. LEXIS 102865 (N.D. Okla. July 24, 2012) (granting motion *in limine* prohibiting plaintiff's counsel from making any suggestion to jury that it may use its verdict as a mechanism to effect social change or to "send a message" to other members of the community); *B.H. v. Gold Fields Mining Corp.*, 2007 U.S. Dist. LEXIS 7592 (N.D. Okla. Feb. 1, 2007) (prohibiting use of words "punitive damages," "punish," or "send a message" during liability phase of trial); *Fintube Techs., Inc. v. Tubetech N. Am., Inc*., 2006 U.S. Dist. LEXIS 41625 (N.D. Okla. June 21, 2006).

7

Another variation on this type of argument has been described as a "Reptile Theory" argument. The crux of this theory is that the jury should be encouraged to decide a lawsuit in favor of the plaintiff based upon fear--generated by plaintiff's counsel--that a verdict in favor of the defendant will harm the safety of the community and, therefore, the juror. According to the theory, once jurors perceive that a safety rule has been broken by a defendant, jurors will award damages to the plaintiff to protect themselves and society as a survival instinct. *See* David Ball, Damages and the Reptilian Brain (Am. Assoc. For Justice, 2009). Regardless of whether one agrees with the "reptile litigation theory," this litigation tactic impairs a defendant's right to a fair trial by forcing the jurors to adjudicate the rights of the parties based on fear and speculation, rather than on a review of the evidence. Arguments and testimony based on the Reptilian Theory are improper, irrelevant, and unfairly prejudicial to Defendants. They should be excluded from trial pursuant to Fed. R. Evid. 401-403.

## VIII.    Requests for Production of Items From Defendants, Defendants' Counsel, or Defendants' Witnesses in the Presence of the Jury.

All exhibits the parties intend to use must be identified in the Pre-Trial Order. It would be unfair for Plaintiff to request that Defendants, Defendants' counsel or any of Defendants' witnesses to produce an item for the purpose of implying to the jury either that such item does not exist, or that Defendants are attempting to hide something. Such requests and/or comments should be excluded pursuant to Fed. R. Evid. 401-403.

## IX.    Witnesses Identified but not Testifying.

Plaintiff may attempt to introduce argument or suggest that non-testifying witnesses would have testified in a certain way. Commentary as to what someone would have testified to if he or she had been called as a witness is worse than hearsay–it is speculation about hearsay. Accordingly, the Court must exclude any such suggestion or speculation at trial as such is gross

8

hearsay, irrelevant, and unfairly prejudicial. Fed. R. Evid. 401-403, 802.

**X.    Excessive and Cumulative Exhibits and Witnesses.**

This Court should limit the Plaintiff to introducing only relevant exhibits which are not cumulative. Fed. R. Evid. 403.

**XI.    Expert Testimony by lay Witnesses.**

This Court must exclude any testimony from Plaintiff's lay witnesses involving expert opinions pursuant to Fed. R. Evid. 701. A lay witness may only testify as to opinions "rationally based on the witness's perception" that is "helpful to clearly understanding the witness's testimony or to determining a fact in issue". Fed. R. Evid. 701(a), (b). Further, Rule 701 precludes a lay witness from testifying as to "scientific, technical, or other specialized knowledge". Fed. R. Evid. 701(c).

To the extent that Plaintiff attempts to offer expert testimony by its lay witnesses, such testimony must be excluded. For instance, this Court Ordered that Plaintiff's witness David E. Panter is not listed as an expert witness and is unqualified to offer any opinions as to the testimony in paragraphs 6 and 16, 17, 19 of his affidavit. Order [Doc. No. 104] at 4-5. This stricken testimony in paragraphs 6 and 19 of the affidavit includes Mr. Panter's opinions as to whether certain repairs to the Aircraft were made correctly, whether certain repairs were certified or approved, and what Plaintiff was required to do as a result of Cirrus' notification of the "Destroyed and Unrepairable" condition of the Aircraft and the FAA's grounding of the Aircraft. Order [Doc. No. 104] at 4. Also stricken by this Court was paragraphs 16 and 17 of Mr. Panter's affidavit which addresses Mr. Panter's inspection of the Aircraft. Order [Doc. No. 104] at 4-5. Any testimony by lay witness Mr. Panter regarding these opinions must be excluded from trial.

Analogous to the stricken testimony of Mr. Panter by this Court, expert testimony from

any of Plaintiff's lay witnesses including Farrukh Azim and Derick Murway must be excluded at trial.

**XII.    Testimony Regarding Amount of Actual Damages.**

Plaintiff has not designated any expert qualified to offer testimony as to the alleged amount of its alleged actual damages. This action is controlled by Oklahoma's Uniform Commercial Code ("OUCC") as ordered by this Court, and Plaintiff is limited to the damages authorized under the OUCC. *See* Order [Doc. No. 143] at 4, n.6. Pursuant to the OUCC, "[t]he measure of damages for breach of warranty is the difference at the time of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted . . .[.]" OKLA. STAT. tit. 12A, § 2-714.

Plaintiff has not designated any expert to testify as to actual damages and has identified no documents, things, or testimony by any individual having the requisite knowledge, experience, or training in aircraft valuation to prove that the nonconformities asserted by Plaintiff caused a reduction in the value of the Aircraft and, separately, to what extent. *See Rodgers v. Beechcraft Corp.*, 759 Fed. App'x 646, 679 (10th Cir. 2018) (expert testimony required on issue of aircraft mechanics).

In an unpublished opinion, the Tenth Circuit Court of Appeals in *Sonrisa Holding, LLC v. Circle K Stores, Inc.*, 835 Fed. App'x 334 (10th Cir. 2020) affirmed a District of Colorado court's summary judgment dismissal of a portion of the plaintiff's claimed damages for trespass because the Plaintiff failed to present necessary expert testimony at summary judgment showing (a) whether the alleged condition allegedly caused by the defendant directly caused the plaintiff to suffer the claimed remediation damages and (b) the value of such damages. *Id.* at 341. Among other claims, the plaintiff claimed that the gasoline runoff from defendant's gas station damaged

the plaintiff's real property and necessitated the installation of a $183,000 vapor barrier to prevent migration so that the plaintiff could sell the property. *See id.* at 337. However, the plaintiff did not retain an expert to offer an opinion showing direct causation or the value of the allegedly necessary remediation damages. *See id.* at 339-340. At summary judgment, the Court found that the technical nature of plaintiff's alleged damages required the support of expert testimony because legal causation and the necessity of certain mitigation measures (e.g., the installation of a vapor barrier to control the infiltration of the defendant's gasoline discharge into the plaintiff's property) were outside the "common knowledge and experience of ordinary persons", and the trial court granted summary judgment against the plaintiff's claim for remediation damages. *Id.* at 339. The Tenth Circuit affirmed, stating:

> At summary judgment, [plaintiff was required] to present admissible evidence showing a genuine issue of material fact with respect to damages. Because [the plaintiff] did not present any admissible evidence showing the contamination caused the remediation damages, or that the remediation damages were reasonable, [the plaintiff] could not withstand summary judgment on their claim for these damages.

*Id.* at 334.

As in *Sonrisa*, Plaintiff's claimed damages in this case, which notably *do not* include any property damage or personal injury, requires a determination by the factfinder as to the value of the Aircraft with alleged nonconformities versus a comparable aircraft without such nonconformities. This is an issue that is not within the ordinary layperson's knowledge. *See, e.g., Lima Charlie Sierra, LLC v. Textron Aviation Co.*, 2023 U.S. Dist. LEXIS 102061 (D. Kan. June 12, 2023). In *Lima Charlie*, the plaintiff failed to retain an expert to opine "as to the extent [the defendant's] alleged negligence caused the airplane to diminish in value." *Id.* at *2-5. Relying on other cases involving valuations requiring technical expert testimony, the court granted summary judgment for the defendant because "[w]ithout expert testimony on the exact issue [of causation

and resultant diminution in value], a jury could not reasonably find in [the plaintiff's] favor at trial." *Id.* at *12. Therefore, "[b]ecause it has not designated an expert to testify on causation, [the plaintiff] cannot prevail on either of its claims." *Id.*

The Court's Scheduling Order [Doc. No. 33] required Plaintiff to file a final list of expert witnesses and submit expert reports by March 5, 2023. A day after the deadline, Plaintiff filed their designation of expert witnesses on March 6, 2023, naming only David E. Farmer to testify that "repairs to the aircraft were not performed properly, were not properly authenticated and the aircraft as at all times been considered by regulation and safety to be unairworthy and without a valid Certificate of Registration." *See* Plaintiff's Designation of Expert Witness [Doc. No. 36]. Mr. Farmer was also designated by Plaintiff to opine on the alleged standard of care and breach thereof by Saker Aviation as well as his opinion on whether fraud occurred. *See id.* at p. 3. Nowhere in Mr. Farmer's expert report does he opine on the value of the aircraft or whether the alleged nonconformities or issues he identified caused damage to Plaintiff or their expectation interest.

Plaintiff is out of time to designate a proper damages expert to opine on an issue plainly requiring specialized knowledge, experience, or training—namely the value of a used aircraft— and Plaintiff does not have any evidence from which a lay factfinder could divine the value of this used and previously damaged Aircraft, with or without alleged nonconformities. Plaintiff was on notice of its need to determine the value of the aircraft, as it alleged in its Complaint [Doc. No. 2] that "the Aircraft cannot now be sold for anything greater than salvage parts, leaving Land 2 Air holding nothing more than an expensive paperweight[.]" Moreover, Plaintiff's corporate representatives both testified that they know that the Aircraft has value, but that they have not had it evaluated to date. At the time of sale to Plaintiff, the Aircraft just had a

brand-new engine installed by FCPA/Woodley, and Plaintiff has not determined how much the Aircraft was worth if it had been sold for parts. Plaintiff has not sued for rescission of the Agreement. Therefore, the only item of even potentially recoverable damage would be the effect of the alleged nonconformities or the acts/omissions of FCPA/Woodley on Plaintiff's expectation interest (e.g., the value of the Aircraft). Plaintiff has not retained an expert to offer an opinion as to the Aircraft's value with or without the alleged nonconformities. For these reasons, this Court should exclude any of Plaintiff's witnesses from testifying as to their opinion on the alleged amount of Plaintiff's actual damages.

**XIII.    Testimony Outside the Scope of Plaintiff's Rule 26 Report and Disclosures.**

Any testimony beyond the scope of Plaintiff's Rule 26 report and disclosures must be excluded. Pursuant to Federal Rules of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

This Court Ordered that certain testimony of Mr. Farmer is outside the scope of Plaintiff's Rule 26 disclosure and must be stricken. Order [Doc. No. 104] at 3. This Court concluded that "Plaintiff did not disclose that Farmer inspected or would be inspecting the Aircraft" and that "any evidence regarding Farmer's inspection of the Aircraft should be stricken." Order [Doc. No. 104] at 3-4.

Similarly, Plaintiff must be precluded from offering any other testimony from its witnesses at trial that were not designated in Plaintiff's disclosures.

**XIV.    Cirrus Attrited List.**

The Cirrus attrited list must be excluded from trial pursuant to Federal Rules of Evidence

402 because the list is not probative of whether the Aircraft was destroyed under the applicable FAA regulations, the parties intentions for the definition of the term "destroyed" as used in the contract, or whether the aircraft had a valid certificate of airworthiness at the time of delivery.

Cirrus internally developed its own definition of destroyed aircraft that is beyond the scope of the ordinary word "destroyed." Additionally, there is no record evidence that the Cirrus attrited list has any relationship with the aircraft's certificate of airworthiness at the time of delivery. Additionally, any minimal probative value of the attrited list to Plaintiff's claims is substantially outweighed by the danger of undue prejudice to Defendants. For instance, the phrasing within the list labeling Cirrus repaired aircrafts as "counterfeit" is highly prejudicial and would improperly influence the jury. The counterfeit classification is also not used within any applicable FAA regulations or publications. For these reasons, the Cirrus attrited list must be excluded pursuant to Fed. R. Evid. 402 and 403.

## XV. Emails Between David Landreth and Loni Woodley Concerning Payment Dispute(s).

The emails between David Landreth and Loni Woodley regarding a payment dispute must be excluded from trial because the communications within the emails are not probative of whether the Aircraft was destroyed under the applicable FAA regulations or common usage of the word "destroyed". Any alleged probative value of the emails is substantially outweighed by the danger of unfair prejudice to Defendants, as the emails involve matters wholly ancillary and irrelevant to Landreth's work on the aircraft. Therefore, the emails between Mr. Landreth and Mr. Woodley concerning a payment dispute(s) must be excluded pursuant to Fed. R. Evid. 402 and 403.

**XVI.  Cirrus Work Order Dated May 1, 2020.**

The Cirrus Work Order dated May 1, 2020, must be excluded from trial because the Order has no relevance to the material fact of whether the Aircraft was destroyed at the time of delivery pursuant to FAA regulations or common usage of the word "destroyed" or whether the aircraft had a valid certificate of airworthiness at the time of delivery. The Work Order is dated over a year after the Aircraft was purchased by Flying CPA on March 29, 2019, and accordingly is not probative as to the condition of the Aircraft at the time of sale as required by OUCC § 2-714. For that same reason, the Order is not relevant to the issues of (a) whether there were any deficiencies with the Aircraft at the time of delivery; (b) the aircraft's value at the time of sale; or (c) whether the aircraft had a valid certificate of airworthiness at the time of delivery. The Work Order must be excluded according to Fed. R. Evid. 402 and 403.

Furthermore, any probative value of the work order is substantially outweighed by the danger of undue prejudice to Defendants because the issues in this case is whether the condition of the Aircraft was a destroyed aircraft or if the aircraft had a valid certificate of airworthiness at the time of delivery.  The Work Order from more than a year after delivery, and after Plaintiff admittedly flew the aircraft for approximately fifty (50) hours, has no bearing on the condition of the aircraft at the time of sale.

**XVII.  Cirrus Logbook Entry.**

The Cirrus Logbook Entry dated April 20, 2020, must be excluded from trial because the Entry has no relevancy to whether the Aircraft was destroyed at the time of delivery pursuant to FAA regulations or common usage of the word "destroyed" or if the aircraft had a valid certificate of airworthiness. The Entry is dated over a year after the Aircraft was purchased by Flying CPA on March 29, 2019, and accordingly is not probative as to the condition of the

Aircraft at the time of sale as required by OUCC § 2-714. The Entry is not relevant for the jury to identify whether there were any deficiencies in the condition of the Aircraft at the time of delivery or identifying the value of the aircraft at the time of delivery. Therefore, the Entry must be excluded according to Fed. R. Evid. 402 and 403.

**XVIII. Cirrus Accident Database Reports by Brannon D. Mayer.**

The Cirrus accident database reports by Brannon D. Mayer are inadmissible hearsay because Cirrus representative Bradley Miller testified that the decision to list the Aircraft as destroyed was based on Mr. Mayer's subjective interpretations of the FAA daily report. Dep. Miller, 102:25-103:10; 107:6-14; 109:4-13, 110:17-111:1. The Cirrus Database reports are not based on personal knowledge as the Aircraft was not inspected by anyone at Cirrus. *Id.* Additionally, the database reports are directly contradicted by the official NTSB accident report finding that the aircraft was only "substantially damaged" and therefore repairable. Because the Cirrus accident database reports are inadmissible hearsay, this Court should enter an Order *in limine* excluding such from trial.

**XIX. Land 2 Air Emails With Cirrus.**

The Land 2 Air emails with Cirrus must be excluded from trial because the content of the emails are not probative of whether the Aircraft was destroyed under the applicable FAA regulations or common usage of the word "destroyed" or if the aircraft had a valid certificate of airworthiness on the date of delivery. Further, any alleged probative value of the emails is substantially outweighed by the danger of unfair prejudice to Defendants, as the emails involve Cirrus' own internally developed subjective criteria for evaluating the airworthiness of its aircraft. Consequently, the Land 2 Air emails with Cirrus must be excluded pursuant to Fed. R. Evid. 402 and 403.

## XX.    Aircraft Payment Documentation.

Plaintiff's exhibit listed as "Aircraft payment documentation" must be excluded because Plaintiff cannot recover proximate damages pursuant to the Aircraft Purchase Agreement. Plaintiff waived the right to recover for incidental or consequential damages under the express terms of the Purchase Agreement. Pursuant to OKLA. STAT. tit. 12A, § 2-719, "[c]onsequential damages may be limited or excluded unless the litigation or exclusion is unconscionable." Here, the Agreement plainly and unambiguously disclaims buyer's remedies for incidental and consequential commercial damages, as the Agreement states, "Buyer hereby expressly waives any claim for incidental or consequential damages[.]" Aircraft Purchase/Sales Agreement, ¶ 7. As such, Plaintiff cannot now claim any damages for incidental and consequential damages, and to the extent that they are recoverable, Plaintiff is limited to its actual damages under OUCC § 2-714. *See Collins Radio Co. v. Bell*, 1980 OK CIV APP 57, ¶ 35, 623 P.2d 1039.

The Court also held that Plaintiff could not recover incidental or consequential damages according to the express terms of the Agreement. Order [Doc. 143] at p. 6. Thus, the Aircraft payment documentation identified by Plaintiff on its final exhibit list must be excluded from trial pursuant to FED. R. EVID. 401, 402, and 403.

## XXI.    Photographs of Damaged Aircraft – Cirrus.

Plaintiff must be prohibited from introducing photographs of the damaged Aircraft at trial because the photos have no relevancy to whether the Aircraft was destroyed at the time of delivery pursuant to the FAA regulations or common usage of the word "destroyed" or if the aircraft had a valid certificate of airworthiness at the time of delivery. The photographs are not relevant to identifying whether there were any deficiencies with the condition of the aircraft at the time of delivery, or to the value of the aircraft with the alleged deficiencies. The photos were

taken prior to the repairs undertaken by a prior owner and have no relevance to the condition of the Aircraft at the time FCPA . The photos are unfairly prejudicial to Defendants and would mislead and improperly influence the jury. Therefore, the photographs of the damaged Aircraft must be excluded pursuant to Fed. R. Evid. 402 and 403.

## XXII.  Summary Board of Damages.

Plaintiff's exhibit listed as "Summary Board of damages" must be excluded because Plaintiff cannot recover proximate damages pursuant to the Aircraft Purchase Agreement. Plaintiff waived the right to recover for incidental or consequential damages under the express terms of the Agreement. Pursuant to OKLA. STAT. tit. 12A, § 2-719, "[c]onsequential damages may be limited or excluded unless the litigation or exclusion is unconscionable." Here, the Agreement plainly and unambiguously disclaims buyer's remedies for incidental and consequential commercial damages, as the Agreement states, "Buyer hereby expressly waives any claim for incidental or consequential damages[.]" Aircraft Purchase/Sales Agreement, ¶ 7. As such, Plaintiffs cannot seek incidental and consequential damages at trial.  *See* OUCC § 2-714; s*ee also Collins Radio Co. v. Bell*, 1980 OK CIV APP 57, ¶ 35, 623 P.2d 1039.

The Court also held that Plaintiff could not recover incidental or consequential damages according to the express terms of the Agreement. Order [Doc. No. 143] at 6. Consequently, the Summary of board damages exhibit must be excluded from trial, as it's presentation would improperly influence the jury and it cannot be an accurate representation of the admissible evidence at trial.  *See* FED. R. EVID. 1006.

## XXIII. Plaintiff's Invoices.

Plaintiff's exhibit listed as "Invoices" must be excluded because Plaintiffs cannot recover proximate damages pursuant to the Aircraft Purchase Agreement. Plaintiff waived the right to

recover for incidental or consequential damages under the express terms of the Agreement. Pursuant to OKLA. STAT. tit. 12A, § 2-719, "[c]onsequential damages may be limited or excluded unless the litigation or exclusion is unconscionable." Here, the Agreement plainly and unambiguously disclaims buyer's remedies for incidental and consequential commercial damages, as the Agreement states "Buyer hereby expressly waives any claim for incidental or consequential damages[.]" Aircraft Purchase/Sales Agreement, ¶ 7. As such, Plaintiffs cannot now claim any damages for incidental and consequential damages, and to the extent that they are recoverable, Plaintiff is limited to its actual damages under OUCC § 2-714. *See Collins Radio Co. v. Bell*, 1980 OK CIV APP 57, ¶ 35, 623 P.2d 1039.

The Court also held that Plaintiff could not recover incidental or consequential damages according to the express terms of the Agreement. Order [Doc. No. 143] at 6. Consequently, the Plaintiff's invoices from third parties allegedly supporting Plaintiff's claimed incidental or consequential damages must be excluded from trial, as it's presentation would improperly influence the jury and it cannot be an accurate representation of the admissible evidence at trial. *See* FED. R. EVID. 1006.

**XXIV. Compliance Report Dated March 3, 2023.**

The Compliance Report dated March 3, 2023, must be excluded from trial because the report has no relevance to the issue of whether the Aircraft was destroyed under the applicable FAA regulations or common usage of the word "destroyed" or whether the aircraft had a valid certificate of airworthiness at the time of delivery. Any alleged probative value of the report is substantially outweighed by the danger of unfair prejudice to Defendants, confusing the issues, and improperly influencing the jury. In addition, this report should be excluded because Plaintiff has not sufficiently identified the exhibit such as to permit Defendants to know how to examine

the document and determine any other objectionable issues Defendants would be unfairly prejudiced by the admission of the document. Based on the irrelevancy of the report and the unfairly prejudicial nature of such, the report must be excluded pursuant to Fed. R. Evid. 401, 402 and 403.

## XXV.  Photographs of Damaged Aircraft Labeled by David Farmer.

Plaintiff must be precluded from introducing photographs of the damaged Aircraft labeled by Mr. Farmer because Plaintiff did not disclose that Mr. Farmer inspected or would be inspecting the Aircraft. Plaintiff's expert disclosures and Mr. Farmer's expert report did not contain any statements that Mr. Farmer investigated or photographed the Aircraft. The Court Ordered that certain testimony of Mr. Farmer is outside the scope of Plaintiff's Rule 26 disclosure and must be stricken. Order [Doc. No. 104] at 3. The Court concluded that "Plaintiff did not disclose that Farmer inspected or would be inspecting the Aircraft" and that "any evidence regarding Farmer's inspection of the Aircraft should be stricken." Order [Doc. No. 104] at 3-4. Similarly, the photographs labeled by Mr. Farmer during his inspection are outside the scope of Plaintiff's expert disclosures and must be excluded pursuant to Federal Rules of Civil Procedure 37(c)(1).

## XXVI. Any Correspondence To or From the FAA Regarding the Subject Airplane After Plaintiff' Purchased the Airplane.

The documents from the FAA are irrelevant to any fact of consequence and must be excluded because the FAA inspection occurred four (4) years after the sale of the Aircraft. The letters accordingly have no probative value as to the condition of the Aircraft at the time of delivery. The letters are also inadmissible hearsay as they are not an official record, and Plaintiff has identified no FAA witness to sponsor the correspondence. The FAA only conducted an investigation at the insistence of Plaintiff after this lawsuit had been on file for approximately

two (2) years, and Plaintiff has refused to produce the documents or correspondence initiating Plaintiff's attorney's interactions with the FAA.

Plaintiff has identified no official FAA records or federal regulations identifying what the term "grounding" means, and the jury should not be forced to guess what the term means and how it is relevant to determining whether the aircraft was "destroyed" or if it had a valid certificate of airworthiness on the date of delivery. Moreover, the Aircraft still has a FAA valid registration as of February 24, 2025. For these reasons, the FAA letters must be excluded from trial. In addition, many of the records [Plaintiff_Supp 000126—000128] from the FAA were produced after discovery was already closed and are unfairly prejudicial ambush documents to which Defendants were not afforded an opportunity to review and question witnesses about the documents during discovery.

Additionally, the documents should be excluded because Plaintiff has cherry-picked certain FAA documents without providing a complete set of the correspondence initiating or completing the FAA's inquiry after these document were produced despite undersigned counsel's request for supplementation to Plaintiff's counsel. For instance, several pieces of correspondence from the FAA indicate that Plaintiff's attorney might have initiated the communications with the FAA. However, Plaintiff did not provide a copy of any initiating documents or correspondence with the FAA. Therefore, Plaintiff's correspondence with the FAA should be excluded pursuant to FED. R. EVID. 401, 402, and 403.

## XXVII. Documents and Discovery Responses that were Provided after the Close of Discovery.

Plaintiff has produced supplemental discovery responses and documents after the close of discovery and after the submission deadline for witness and exhibit lists. To the extent that Plaintiff intends to introduce any of these documents at trial, Defendants request that the

documents be excluded as not produced to Defendants during the discovery period and thus unfairly prejudicial to the extent that Defendants were unable to investigate the documents and statements contained therein during discovery.

### XXVIII. Any Exhibits and/or Witnesses not Listed on Plaintiff's Properly Filed Exhibit List.

On September 7, 2023, Plaintiff sought leave from the Court to file an updated exhibit list.  The Court granted Plaintiff's request and ordered Plaintiff to supplement its list on or before September 15, 2023.  Plaintiff never filed a supplemental list.  Therefore, Defendants seek to exclude any and all documents that are listed as exhibits by Plaintiff that are not listed on the Final Exhibit List filed by Plaintiff on July 26, 2023 [See Doc. 79].

### CONCLUSION

WHEREFORE, premises considered, the Defendants respectfully request that this Court enter the pretrial Orders *in Limine* set forth herein.

Respectfully submitted,

LATHAM, KEELE, LEHMAN,
RATCLIFF, CARTER & CLARKE, P.C.

/s/  Troy J. McPherson
Marcus N. Ratcliff, OBA No. 19201
mratcliff@law-lsl.com
Troy J. McPherson, OBA No. 32071
tmcpherson@law-lsl.com
1515 E. 71st Street, Suite 200
Tulsa, Oklahoma 74136
Telephone:  918-970-2000
Facsimile:  918-970-2002
*Attorneys for Flying CPA & Loni Woodley*

22

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 24, 2025, a true and correct copy of the above and foregoing instrument was served on the below counsel of record via ECF filing.

William W. Camp
Lewis N. Carter
James A. McCorquodale

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OKLAHOMA
 2
   LAND 2 AIR INVESTMENTS,        )
 3 LLC, As successor entity       )
   by conversion to LAND 2        )
 4 AIR INVESTMENTS and as         )
   Successor to LAND 2 AIR        )
 5 INVESTMENTS, LLP,              )
                                  ) CIVIL ACTION
 6              Plaintiff,         )
                                  ) NO.: 21-CV-00231 JED-JFJ
 7 VS.                            )
                                  )
 8 FLYING CPA, LLC, LONI          )
   WOODLEY, and SAKER             )
 9 AVIATION SERVICES, CO.,        )
                                  )
10              Defendants.       )

11       ------------------------------------

12          ORAL AND VIDEOTAPED DEPOSITION OF

13                     BRAD MILLER

14                    MAY 16, 2023

15       ------------------------------------

16       ORAL AND VIDEOTAPED DEPOSITION OF BRAD MILLER,

17 produced as a witness at the instance of the DEFENDANT,

18 and duly sworn, was taken in the above-styled and

19 numbered cause on May 16, 2023, from 10:39 a.m. to

20 3:48 p.m., before Brandi Schmitz, CSR in and for the

21 State of Texas, reported by machine shorthand, at the

22 law offices of Jackson Walker, LLP, 2323 Ross Avenue,

23 Suite 600, Dallas, Texas 75201, pursuant to the Federal

24 Rules of Civil Procedure and the provisions stated on

25 the record or attached hereto.
```



1 airplane, the typical -- just like buying a house.  You
2 have a house inspection performed to make sure you're
3 not buying a lemon.  In the airplane industry, people
4 have pre-buy inspections done.  So they have the
5 airplane inspected and the documentation on the airplane
6 reviewed.  So if Cirrus never published this letter, it
7 wouldn't matter, because there's enough mechanisms in
8 place and the care and maintenance of that airplane in
9 the FAR, the Federal Aviation Regulations, just in the
10 normal scope of the care of that airplane.  Whether we
11 have this letter or not doesn't matter.  The -- the
12 logbook should reflect the damage and the repairs made
13 to that airplane and a good pre-buy inspection would
14 identify whether they were done correctly.
15     Q.  Okay.  Well, were the repairs to this airplane
16 documented in the logbooks?
17     A.  They should be.  They're legally required to
18 be.
19     Q.  Well, have -- did you review the logbooks in
20 preparation for your deposition today?
21     A.  I don't -- no.
22     Q.  Okay.  So how do you know whether or not the
23 repairs to this aircraft were documented or not?
24     A.  I don't.
25     Q.  Do you know how Brandon Mayer determined that



1  this plane was destroyed?

2      A.  The photographs, when they were selling the

3  salvage -- you know, in 2016 when someone flagged the

4  airplane as being sold, he knew that it had a bad crash

5  and he went back and he looked at the photos.  And in

6  the photos he was able to find the spar tunnel damage.

7  What Brandon and myself haven't been able to figure out

8  is why we didn't list it on the SEL -- SIL originally.

9  We don't have -- we don't have a good recollection of,

10  you know, how that escaped us.

11      Q.  Well, do you understand why you've been asked

12  for a deposition today?

13          MR. CAMP:  Objection, form.

14      Q.  (BY MR. MCPHERSON)  If you don't, I'll tell

15  you.  Do you understand what the dispute in this

16  litigation is?

17      A.  No.  I'm -- I prepared for the five topics.

18  That's all.

19      Q.  That's fair.  Well, I will represent to you

20  that a purchaser of this aircraft has sued my client who

21  sold the aircraft to the plaintiff based on the fact

22  that this plane was listed on the attrited list when

23  they bought it.  And my client will -- will testify that

24  he had no idea that the attrited list even existed when

25  he bought the plane in 2016.



1  airplane.

2      Q.  All right.  Serial number never changes?

3      A.  No.

4      Q.  Or it shouldn't, correct?

5      A.  Shouldn't.

6      Q.  All right.  And this subject aircraft was

7  involved in an off-field landing in rocky, uneven

8  terrain in the desert of Nev- -- of Nevada, correct?

9      A.  Correct.

10      Q.  And did you ever look at the photographs of the

11  accident, of the crash?

12      A.  The -- we weren't onsite, and we don't have any

13  Cirrus photographs of the accident site.  I don't recall

14  whether we were provided some.

15      Q.  Okay.  I'm going to show you some here.  If I

16  can get some exhibit stickers.  I should have done this

17  before it was my turn.

18          THE COURT REPORTER:  Okay.  Nobody talk.

19          I think we stopped on 6, right?

20          MR. MCPHERSON:  Yes.

21          MR. BROWN:  Yes.

22          MR. CAMP:  I was told not to talk.

23          (Exhibit 7 marked)

24      Q.  (BY MR. CAMP)  Let me show you what's been

25  marked as Exhibit Number 7 identified as Plaintiffs'



 1  But in this case, being that we didn't travel, I don't
 2  know the time line of this -- the exact time line of
 3  when he received these photos.
 4      Q.  And that's what I was going ask you.
 5  Ordinarily, if there's a crash, the NTSB, the FAA
 6  invites the manufacturers to the crash site; is that
 7  correct?
 8      A.  Correct.
 9      Q.  And in this particular case, I've heard it say
10  today that they didn't do -- invite Cirrus, the
11  manufacturer, because they had determined that this was
12  a suicide attempt; is that right?
13      A.  Correct.
14      Q.  And then at that point Cirrus -- are they told
15  not to come or just Cirrus makes the decision not to go?
16      A.  You have to be invited.  You can't just show
17  up.  So you're -- and being that they didn't invite us,
18  we weren't -- we didn't go.
19      Q.  Honestly, you can't even actually go to the
20  scene unless you're invited; is that correct?
21      A.  Correct.
22      Q.  Because the crash site is protected by whoever
23  the investigators are out there in the law enforcement,
24  right?
25      A.  Correct.



1     Q.  All right.  And that's in every acc- -- every

2 aircraft crash, correct?

3     A.  Yes.

4     Q.  All right.  And so we know that this -- we're

5 looking at Exhibit Number 5, which we had just covered.

6 Tell me what Exhibit Number 5 is again.

7     A.  They're screenshots of our air safety database.

8     Q.  And this is where you described that Mr. Mayer

9 had put into the database for the first time information

10 about the craft crash, to your knowledge; is that

11 correct?

12     A.  Yes.

13     Q.  All right.  Do you know whether or not at this

14 point Mr. Mayer would have seen these crash photos or

15 the NTSB report?

16     A.  I'm not sure.

17     Q.  All right.  At what point -- one of the things

18 you did tell us is that at some point Mr. Mayer

19 describes looking at photographs and determining that

20 the aircraft 2112 was destroyed or unrepairable,

21 correct?

22     A.  Correct.

23     Q.  And do you know what photographs he looked at?

24     A.  They're the photographs he took off the -- I

25 believe off the COPA website of the salvage that was up



```
 1  for sale.

 2      Q.  Okay.  Oops.  Well --

 3            THE COURT REPORTER:  You need a new

 4  sticker?

 5            MR. CAMP:  No.  Let me just correct it.

 6      Q.  (BY MR. CAMP)  Let me show you what's been

 7  marked as Exhibit 9 and identify it as Plaintiffs'

 8  Production 595 through 599.

 9            (Exhibit 9 marked)

10      Q.  (BY MR. CAMP)  I'll let you review those real

11  quick.

12      A.  All right.

13      Q.  Okay.  Is -- do you recognize the photographs

14  in Exhibit Number 9?

15      A.  I don't believe I've ever seen these.

16      Q.  Okay.  Let me show you what's been marked as

17  Exhibit Number 8.

18            (Exhibit 8 marked)

19      A.  Okay.

20      Q.  (BY MR CAMP)  Have you seen that photograph?

21      A.  I'm not as sure about this one.

22      Q.  I'll represent to you that's a picture of the

23  aircraft in the salvage yard after they recovered it.

24            As you sit here today, do you know if

25  Mr. Mayer looked at any of these types of photographs?
```

